**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

JASON S.,[1]

                      Plaintiff,
      v.                                          **DECISION AND ORDER**
                                                                     21-CV-101-RJA

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

       Jason S. ("Plaintiff") brings this action seeking review of the Commissioner of Social Security's final decision that denied his application for Supplemental Security Income ("SSI") under Title XVI of the SSA. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties filed cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. 6, 7. Plaintiff also filed a response brief. Dkt. 8.

       The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, which the Court refers to only as necessary. *See Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges ["ALJs"] must use to make disability determinations); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122-23 (2d Cir. 2012) (same). For the reasons stated below, the Court DENIES the Plaintiff's motion and GRANTS the Commissioner's motion.

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by his first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

I.   **PROCEDURAL HISTORY**

Plaintiff alleged disability beginning on December 31, 2009.[2] Tr. 15.[3] He filed an application for SSI on May 31, 2018. *Id*. The application was initially denied on October 24, 2018. *Id.* Plaintiff requested an administrative hearing on November 16, 2018. *Id.* On February 18, 2020, a hearing was held at which Plaintiff appeared with his attorney and testified via teleconference; a Vocational Expert ("VE"), Robert Baker, also testified on this date. *Id.* ALJ John Noel reviewed the case and issued an unfavorable decision on April 22, 2020, finding Plaintiff not disabled. Tr. 15-26.

A.   **The ALJ's Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application. Tr. 17. At Step Two, the ALJ determined that Plaintiff had severe impairments of: (1) degenerative disc disease of the lumbar spine status-post fusion, (2) status-post lateral ligament reconstruction of the right ankle, (3) status-post ligament repair of the left shoulder, (4) anxiety disorder, and (5) depressive disorder. *Id.* The ALJ also noted that Plaintiff had the following non-severe impairments: obesity, hypertension, diabetes, and cataracts. Tr. 18. At Step Three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 19. He determined Plaintiff's

---

[2] Plaintiff subsequently amended his alleged onset date to the date of his application for benefits, *i.e*., May 31, 2018. Tr. 15.

[3] "Tr. __ " refers to pages of the certified administrative transcript at Dkt. 4, specifically the pagination located at the bottom, right-hand corner of the transcript.

Residual Functional Capacity ("RFC") to be at the light work level,[4] with additional limitations:

> [Plaintiff could] occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally balance; frequently stoop; frequently kneel; frequently crouch; and frequently crawl. [Plaintiff] could have no contact with the public and not work on a team with co-workers. Tr. 21.

At Step Four, the ALJ found Plaintiff has no past relevant work. Tr. 25. Then, at Step Five, the ALJ identified other jobs in significant numbers in the national economy that would be suitable for Plaintiff to perform. *Id*. Therefore, the ALJ found Plaintiff not disabled within the meaning of the SSA. Tr. 26.

### B. Appeals Council Review

On May 24, 2020, Plaintiff requested review by the Appeals Council. Dkt. 6 at 2. On November 23, 2020, the Appeals Council denied his request for review. *Id.* The Commissioner thus adopted the ALJ's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. This action seeks review of the Commissioner's final decision.

## II. DISCUSSION

### A. Standard of Review

The Court reviews the record to determine whether the Commissioner applied the correct legal standards and whether substantial evidence supports the

---

[4] Agency regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time and frequently lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Commissioner's final decision. 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### B. Application

In the instant case, Plaintiff argues two points of error: (1) the ALJ relied on his lay opinion to craft the mental RFC; and (2) the ALJ failed to recognize a social limitation concerning interactions with supervisors. The Court addresses, and rejects, each argument in turn.

#### 1. Lay Opinion Mental RFC[5]

Plaintiff contends that the ALJ's mental RFC findings were unsupported as the ALJ substituted his own lay opinion for those of mental health experts. Plaintiff's assertion is conclusory and not well-developed. *See Coley D. v. Comm'r of Soc. Sec.*, No. 20-CV-6541, 2021 WL 2002525, *3, 2021 U.S. Dist. LEXIS 95293, *7 (W.D.N.Y. May 19, 2021) (declining to reconsider the ALJ's reasons for relying on a non-examining source where claimant "develop[ed] no argument as to why such reason[s] [were] either incorrect or impermissible").

In any event, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," and "[t]here is no absolute bar to crediting only portions of medical source opinions." *Labonte v. Berryhill*, No. 16-CV-518-FPG, 2017 WL 1546477, *3, 2017 U.S. Dist. LEXIS 66086, *7 (W.D.N.Y. May 1, 2017). An ALJ may rely on portions of several opinions to craft the RFC. *See Daniel R. v. Comm'r of Soc. Sec.*, No.

---

[5] Before this Court, Plaintiff challenges only the ALJ's consideration of his mental impairments.

20-CV-589-MJR, 2021 WL 1747788, *4, 2021 U.S. Dist. LEXIS 84994, *13 (W.D.N.Y. May 4, 2021) (concluding that the ALJ did not "improperly substitute his own 'lay' opinion for that of a medical source" but permissibly "drew from aspects of the available medical opinions in formulating the RFC"). In addition, even without a medical opinion, other evidence can be used to support RFC findings. *See Samantha T. v. Comm'r of Soc. Sec.,* No. 20-CV-201-FPG, 2021 WL 3566597, *3, 2021 U.S. Dist. LEXIS 152239, *9-10 (W.D.N.Y. Aug. 12, 2021). Here, the ALJ clarified which pieces of evidence were being allocated what amount of weight and for what reason. It is not the duty of this Court to re-weigh any conflicting evidence and evaluate the proper weight that should be allocated to each piece. *See Schaal*, 134 F.3d at 504.

Accordingly, the ALJ's consideration of the state agency consultant's opinion was proper. The state agency consultant, S. Juriga, opined that Plaintiff had a mild limitation interacting with others. Tr. 71. The ALJ found the state agency consultant's opinion partially persuasive because the consultant did not have the opportunity to personally examine Plaintiff and did not review later-submitted evidence.[6] Tr. 24. The ALJ partially credited the state agency consultant's opinion because the consultant explained his conclusions using objective findings from the record. *Id*. While the state agency consultant's opinion is only partially consistent with the record in its entirety, the ALJ accounted for any discrepancies by imposing greater restrictions. *Id*. *See Cook v. Comm'r of Soc. Sec.,* 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains

---

[6] Exhibits B7F (Chautauqua County Mental Health progress notes) and B8F (Community Eye Care treatment notes) were received after the hearing. Tr. 29.

5

sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'") Here, the ALJ imposed a mental RFC of no social contact with the public or on a team as opposed to limited social contact. Tr. 21, 24-25.

Furthermore, the ALJ described in depth how he relied on both the state agency consultant's opinion as well as treatment notes to formulate the mental RFC. Tr. 23, 24. The ALJ went through Plaintiff's treatment history, including the later-submitted evidence, and concluded that "[Plaintiff] had a history of anxiety, trouble dealing with others, such as his family members, and difficulty controlling his temper that continued after the application date" (B1F, Tr. 284, B7F). Tr. 23. The ALJ's greater restrictions were favorable to Plaintiff as the record contained conflicting accounts of Plaintiff's mental capacity. Plaintiff sometimes appeared with an angry mood (B3F), but also "appeared bright, interactive, and cooperative with appropriate behavior, a normal mood, normal attention and concentration, and normal judgment in meetings with his providers" on other occasions (B6F). Tr. 23. Plaintiff undertook several responsibilities: he had a new baby at home and lived with several animals (B7F, Tr. 439); he was able to regularly perform childcare (B4F, Tr. 351); he changed homes during the relevant period of disability (B7F, Tr. 461); and he expressed an interest in working on cars and motors, indicating that he had some intact cognitive and mental ability (B3F, Tr. 328). Plaintiff also took prescription medications and attended counseling (B3F, B7F). Tr. 23. On the other hand, Plaintiff failed to attend his voluntary mental health sessions multiple times (B7F*). Id.* In sum, substantial evidence supports the mental RFC finding because the ALJ utilized Plaintiff's treatment notes in conjunction with portions of the state agency consultant's opinion. Therefore, the ALJ did not solely rely on his lay opinion.

### 2. Social Interaction Limitation Concerning Supervisors

In his mental RFC determination, the ALJ restricted Plaintiff's social interaction by precluding him from having contact with the public and from working on a team with his co-workers. Tr. 21, 25. Plaintiff argues that the ALJ erred by failing "to account for the Plaintiff's ability to interact with supervisors." Dkt. 6 at 16. In support of this position, Plaintiff states the proposition that "[a] limitation in interacting with the public is not equivalent to a limitation interacting with coworkers or supervisors." *See Smith v. Colvin*, 2017 WL 489701, *3, 2017 U.S. Dist. LEXIS 17226, *7 (W.D.N.Y. 2017).

In this case, any omission of Plaintiff's ability to interact with supervisors constitutes harmless error. The Dictionary of Occupational Titles (DOT) "provides a code, numbered 0-8, for the type of social interaction each occupation requires." *Habschied v. Berryhill*, 2019 WL 1366040, *9, 2019 U.S. Dist. LEXIS 50656, *29 (W.D.N.Y. 2019) (internal citations omitted). An occupation with a social interaction code of "8" means that "the degree of relation to people required for that position is [n]ot [s]ignificant." *Id.* Level 8 interaction requires:

> Taking Instructions—Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed). Helping applies to 'non-learning' helpers.

DOT, Appendix B, 1991 WL 688701 (1991).

Positions categorized as involving level 8 interaction can be performed by individuals who require limited interaction with supervisors. *See Sanchez v. Colvin*, No. 13-CV-2479-GBC, 2014 WL 5147793, *16, 2014 U.S. Dist. LEXIS 146252, *46 (M.D. Pa. 2014) ("a position with this 'people' code is one that can be performed despite

7

limitations in interacting with supervisors") (collecting cases). Courts have determined that "level 8 interaction is compatible with an RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public." *Scott C. v. Comm'r of Soc. Sec.*, No. 20-CV-109, 2021 WL 2682276, *5, 2021 U.S. Dist. LEXIS 122180, *12-13 (D. Vt. June 30, 2021) (internal quotation marks omitted).

As the Commissioner correctly notes, the performable occupations identified by the VE and listed in the ALJ's decision—a photocopy machine operator, marker, and router— all involve "level 8" interaction. *See* DOT §§ 207.685-014, 209.587-034, 222.587-038 (4th ed. 1991). Therefore, any error by the ALJ in failing to include a mental RFC limitation relating to interaction with supervisors is harmless, and remand is not warranted on this ground. *See Whitehorne v. Comm'r of Soc. Sec.,* No. 19-CV-0256-MWP, 2020 WL 5077025, *4, 2020 U.S. Dist. LEXIS 156037, *14 (W.D.N.Y. Aug. 27, 2020) (limiting interactions with coworkers and general public but not supervisors was harmless error where representative occupations could be performed by "individuals who require limited interaction with supervisors"); *Martinez Reyes v. Comm'r of Soc. Sec.*, No. 18-CV-394-MJR, 2019 WL 3369255,*6-7, 2019 U.S. Dist. LEXIS 125100, *7 (W.D.N.Y. July 26, 2019) (same).

The Court also observes that there is no evidence in the record supporting a conclusion that Plaintiff required any social limitation with supervisors, as Plaintiff has no previous employment history. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what is does not say.").

8

The Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Here, the Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law.

### III. CONCLUSION

For all the reasons stated, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is DENIED, the Commissioner's Motion for judgment on the pleadings (Dkt. 7) is GRANTED, and the Commissioner's final decision is AFFIRMED. The Clerk of the Court shall take all steps necessary to enter judgment and close the case.

**IT IS SO ORDERED.**

      __*s/Richard J. Arcara*_____
      HONORABLE RICHARD J. ARCARA
      UNITED STATES DISTRICT COURT

Dated: August 4, 2023
       Buffalo, New York